IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LINWOOD HARPER,

    Plaintiff,

v.                                 Civil Action No. 3:15CV303

DR. GORE, et al.,

    Defendants.

MEMORANDUM OPINION

Linwood Harper, a Virginia inmate proceeding pro se and in forma pauperis, has filed this 42 U.S.C. § 1983 action.[1] By Memorandum Order entered on November 18, 2015, the Court directed Harper to submit a Particularized Complaint. (ECF No. 10, at 2.) Harper has submitted his Particularized Complaint. (ECF No. 14.) The matter is before the Court on the Motion to Dismiss (ECF No. 31) filed by Defendants Nurse Jones,

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Nurse Hamlin, and Dr. Gore,[2] as well as the Court's Memorandum Order of August 22, 2016, directing Harper to show cause as to why Defendants Quintana and Dugger should not be dismissed without prejudice for failure to serve them in a timely manner (ECF No. 36). Despite receiving Roseboro[3] notice, Harper has not responded to the Motion to Dismiss. For the reasons stated below, the Court will dismiss without prejudice all claims against Quintana and Williams pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The Court will also grant in part and deny in part the Motion to Dismiss.

I. **FAILURE TO SERVE QUINTANA AND DUGGER**

Under Federal Rule of Civil Procedure 4(m),[4] Harper had ninety (90) days from March 23, 2016 to serve the Defendants.

---

[2] Nurse Jones is a Registered Nurse at Greensville Correctional Center ("GCC"). Nurse Hamlin is the Head Nurse at GCC. Dr. Gore is the Medical Director at GCC.

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4] Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

2

In his Notice of Appearance, counsel for Matheny, Crowell, and Lowe stated that he was unable to enter an appearance or waive service of process for Quintana "because there are no current or former Virginia Department of Corrections employees at Greensville Correctional Center with that last name." (ECF No. 21, at 1 n.1.) Counsel was also unable to enter an appearance or waive service of process for Dugger, "who [was] no longer employed by the Virginia Department of Corrections." (Id.)

By Memorandum Order entered on August 22, 2016, the Court directed Harper "to show good cause why the action should not be dismissed without prejudice" as to Quintana and Dugger. (ECF No. 36, at 1.) Harper has responded, stating in pertinent part:

> 1. On or about April, 2016 the defendants Dr. Gore, et al. were served with a copy of said Complaint in the above styled matter.
> 2. Plaintiff now respectfully submits to this Court that because the defendants in this matter were served by Quintana and Dugger, and within the required time frame, that the plaintiff has complied and met the required rules under Federal Rules of Civil Procedure in this matter and therefore, plaintiff's action pending in this Court should not be dismissed.

(ECF No. 37, at 1 (spelling and grammar corrected).)

Rule 4(m) requires that, absent a showing of good cause, the Court must dismiss without prejudice any complaint in which the plaintiff fails to serve the defendant within the allotted 90-day period. Fed. R. Civ. P. 4(m). Courts within the United

3

States Court of Appeals for the Fourth Circuit found good cause to extend the 90-day time period when the plaintiff has made "'reasonable, diligent efforts to effect service on the defendant.'" Venable v. Dep't of Corr., No. 3:05cv821, 2007 WL 5145334, at *1 (E.D. Va. Feb. 7, 2007) (quoting Hammad v. Tate Access Floors, Inc., 31 F. Supp. 2d 524, 528 (D. Md. 1999)). Neither pro se status nor incarceration constitutes good cause. Sewraz v. Long, No. 3:08CV100, 2012 WL 214085, at *1-2 (E.D. Va. Jan. 24, 2012) (citing cases).

Contrary to Harper's assertion, Quintana and Dugger have not been served. Harper's response fails to demonstrate good cause for his failure to serve Quintana and Dugger in a timely manner. Accordingly, Harper's claims against Quintana and Dugger will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## II. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

4

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

5

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, sua sponte, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. SUMMARY OF PERTINENT ALLEGATIONS

On June 25, 2013, Harper participated in "pill call" at GCC. (Part. Compl. 5, ECF No. 14.)[5] Nurse Jones gave Harper pills "that he was not familiar with." (Id.) According to

---

[5] The Court utilizes the pagination assigned to the Particularized Complaint by the CM/ECF docketing system. The Court corrects the spacing, capitalization, and punctuation in quotations from the Particularized Complaint. The Court omits those allegations that do not pertain to Defendants Gore, Hamlin, and Jones.

6

Harper, he told Nurse Jones "that she ha[d] given him [the] wrong prescription drugs to take and that it was not his medication." (Id.) Nurse Jones replied, "'Harper it's your meds take them,'" so Harper took the medication. (Id.) Later that night, Harper "was rushed to Southside Regional Medical Center." (Id.) His pulse and sugar were "very low," he had an irregular heartbeat, and was "showing signs of an overdose." (Id.)

On July 1, 2013, Nurse Hamlin "interviewed Harper to let him know that Nurse Jones did indeed give him the wrong medication and that he had the right to refuse medication offered to him if [it was] not [his] medication[.]" (Id. at 6 (internal quotation marks omitted).) On April 3, 2014, Nurse Hamlin told Harper "that he was being monitored and prescribed Tylenol x 14 days thereafter," which Harper could buy from commissary. (Id. (internal quotation marks omitted).) Harper "explained to Nurse Hamlin that he needed more treatment and wanted to see a specialist [for] dizziness, headaches, breathing problems . . . and chest pains." (Id.) However, he "was . . . ignored about the treatment for a specialist." (Id.)

On February 18, 2014, Harper had an appointment with Dr. Gore. (Id. at 8.) Harper "explained to Dr. Gore the headaches, dizziness and shortness of breathing [during] conversations." (Id. (internal quotation marks omitted)) Harper suggested that

7

Dr. Gore send Harper "to see a specialist to have a CAT scan [and] MRI done." (Id.) Dr. Gore told Harper that "she felt that seeing a specialist was not necessary." (Id.) Dr. Gore "told Harper you are being monitored; since you have written a complaint, you will be scheduled to see a specialist." (Id.) Dr. Gore also mentioned that Harper had been offered "Tylenol until further notice." (Id.) Harper was subsequently transferred to Lawrenceville Correctional Center ("LVCC") and has not yet seen a specialist. (Id.) Harper seeks monetary damages from all Defendants. (Id. at 9-10.)

Harper's Particularized Complaint raises the following claims for relief with respect to Nurse Jones, Nurse Hamlin, and Dr. Gore:

> Claim One: Nurse Jones (a) acted negligently and (b) violated Harper's rights under the Eighth Amendment[6] by providing Harper the wrong medication on June 25, 2013. (Id. at 5.)[7]

---

[6] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[7] Harper also asserts that Nurse Jones, Nurse Hamlin, and Dr. Gore violated his rights under the Fourteenth Amendment by demonstrating indifference to his medical needs. However, "when a prison official is accused of deliberate indifference to a serious risk of harm, that claim is properly considered under the Eighth Amendment." Lovings v. Johnson, No. Civ.A. 7:05CV000050, 2005 WL 2076535, at *1 (W.D. Va. Aug. 25, 2005). Moreover, to the extent that Harper claims Nurse Jones, Nurse Hamlin, and Dr. Gore acted negligently, "[a] prison official's negligence does not violate the due process clause." Gordon v. Kidd, 971 F.2d 1087, 1095 (4th Cir. 1992) (citing Davidson v. Cannon, 474 U.S. 344, 347 (1986)). Accordingly, the Court

Claim Two:     Nurse Hamlin (a) acted negligently, (b) violated Harper's rights under the First[8] and Fourteenth[9] Amendments by "respond[ing] to Harper's informal complaint in an unprofessional manner," and (c) violated Harper's rights under the Eighth Amendment by failing "to take the proper precautions [for] treating Harper." (Id. at 6.)

Claim Five:    Dr. Gore (a) acted negligently and (b) violated Harper's rights under the Eighth Amendment by failing to refer Harper to a specialist. (Id. at 8.)

## IV. SECTION 1983 CLAIMS

### A. Eighth Amendment Claims

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions

---

considers Harper's deliberate indifference claim with respect to Nurse Jones, Nurse Hamlin, and Dr. Gore under the Eighth Amendment only.

[8] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[9] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

9

sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the

inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect

11

that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

Here, Harper has alleged that after taking the wrong medication on June 25, 2013, he was "rushed to Southside Regional Medical Center." (Part. Compl. 5.) When he arrived at the emergency room, his "pulse [and] sugar w[ere] very low and [he] had irregular heartbeats; showing signs of an overdose." (Id.) Harper further alleges that, in February and April of 2014, he "was having a lot of dizziness, headaches, breathing problems [and] chest pains." (Id. at 6.) Given these allegations, the Court concludes that Harper has alleged sufficient facts with respect to the objective prong of an Eighth Amendment claim. See Iko, 535 F.3d at 241 (quoting Henderson, 196 F.3d at 846). Accordingly, the Court will consider whether Harper has alleged sufficient facts as to each Defendant with respect to the subjective prong.

### 1. Nurse Jones

In Claim One (b), Harper contends that Jones provided inadequate medical care by "giving [the] wrong prescription

drugs" to him. (Part. Compl. 5.) According to Harper, he told Jones "that she ha[d] given him [the] wrong prescription drugs to take and that it was not his medication." (Id.) Jones replied, "'Harper it's your meds take them,'" so Harper took the medication. (Id.) Approximately one week later, Nurse Hamlin informed Harper that "Nurse Jones did indeed give him the wrong medication . . . ." (Id. at 6.)

Harper, however, "does not allege any facts whatsoever indicating that Nurse Jones intentionally or recklessly gave [Harper] the wrong medication," as he must to state an Eighth Amendment claim. Baldwin v. Bell, No. 1:11CV180 (CMH/TRJ), 2012 WL 214915, at *3 (E.D. Va. Jan. 20, 2012). Harper also fails to allege facts suggesting that Nurse Jones gave him the medication "with knowledge it would cause him harm." Crowley v. Meyers, 2002 WL 31180743, at *2 (N.D. Ill. Sept. 30, 2002) (citation omitted). Moreover, "[t]he fact that [Harper] questioned his medication, [and] was assured by [Nurse Jones] that it was his . . . at most amounts to negligence." Id. (citations omitted); see Williams v. Snyder, No. Civ.A. 01-632-JJF, 2002 WL 32332192, at *2 (D. Del. Sept. 30, 2002) (noting that "[a] mistake in administering medication is more appropriately recoverable in negligence rather than a § 1983 action"). Here, Nurse Jones's error in providing the wrong medication to Harper "only constitutes negligence, or perhaps malpractice, neither of which

13

become a constitutional violation merely because [Harper] is a prisoner." Baldwin, 2012 WL 214915, at *3 (citations omitted). Harper has failed to allege sufficient facts showing that Nurse Jones "subjectively recognized a substantial risk of harm" to Harper and "subjectively recognized that [her] actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee, 372 F.3d at 303 (quoting Rich, 129 F.3d at 340 n.2). Accordingly, Claim One (b) will be dismissed.

### 2. Nurse Hamlin

In Claim Two (c), Harper faults Nurse Hamlin for not "tak[ing] the proper precautions [for] treating Harper." (Part. Compl. 6.) On April 4, 2014, Nurse Hamlin "told Harper that he was being monitored and prescribed Tylenol x 14 days" and that Harper could purchase Tylenol from the commissary thereafter. (Id. (internal quotation marks omitted).) Harper alleges that he "explained to Nurse Hamlin that he needed more treatment and wanted to see a specialist." (Id.) However, he "was . . . ignored about the treatment for a specialist." (Id.)

Harper fails to allege facts that indicate that Nurse Hamlin knew of and disregarded a substantial risk to Harper's health by not referring him to a specialist. See Farmer, 511 U.S. at 837. Although Harper indicates that in April 2014, he "was having a lot of dizziness, headaches, breathing problems . . . and chest pains," (Part. Compl. 6), he fails to allege

14

that he told Nurse Hamlin that he was experiencing these symptoms. Thus, Harper fails to allege sufficient facts to suggest that Nurse Hamlin was deliberately indifferent to his medical needs by failing to refer him to a specialist for those symptoms. See Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006) ("Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing" (citing Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992))). At most, Harper states a disagreement with Nurse Hamlin with respect to the appropriate course of treatment for his condition. See Wright, 766 F.2d at 849 (citing Gittlemacker, 428 F.2d at 6). Accordingly, Claim Two (c) will be dismissed.

### 3. Dr. Gore

In Claim Five (b), Harper contends that Dr. Gore failed to refer him to a specialist to undergo a CAT scan and MRI, even though she stated that she would do so. (Part. Compl. at 8.) "[T]he question whether a[ CAT scan] or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order a[ CAT scan], or like measures, does not represent cruel and unusual punishment." Estelle, 429 U.S. at 107. Here, Dr. Gore concluded that Harper's condition could be managed with

15

Tylenol and monitoring, and that Harper did not require a CAT scan or an MRI, or referral to a specialist. (Part. Compl. 8.)

Although Dr. Gore failed to follow through with ensuring that Harper saw a specialist before Harper was transferred, Harper fails to allege facts that suggest Dr. Gore perceived that such a lapse posed a substantial risk to Harper's health. Parrish ex rel. Lee, 372 F.3d at 303 (quoting Rich, 129 F.3d at 340 n.2). Rather, it appears that Dr. Gore likely told Harper that he would be referred to a specialist in an attempt to placate Harper. Because Harper fails to allege sufficient facts demonstrating that Dr. Gore was deliberately indifferent to his medical needs, Claim Five (b) will be dismissed.

B. **First and Fourteenth Amendment Claim**

In Claim Two (b), Harper alleges that Hamlin violated his rights under the First and Fourteenth Amendments by "respond[ing] to Harper's informal complaint in an unprofessional manner." (Part. Compl. 6.) "[T]here is no constitutional right to participate in grievance proceedings." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Because Harper enjoys no constitutional right to participate in grievance proceedings, his allegation that Hamlin improperly responded to his informal complaint is legally frivolous. See Banks v. Nagle, Nos. 3:07CV-419-HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va.

16

May 1, 2009) (citation omitted). Moreover, simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). Accordingly, Claim Two (b) will be dismissed.

## V. NEGLIGENCE CLAIMS

In Claims One (a), Two (a), and Five (a), Harper contends that Jones, Hamlin, and Gore acted negligently with respect to his medical care. (Part. Compl. 5-6, 8.) An assertion of negligence, however, does not state a claim of constitutional dimension. See Deavers v. Diggins, No. 3:13-CV-821, 2015 WL 692835, at *4 (E.D. Va. Feb. 18, 2015) (citing Farmer v. Brennan, 511 U.S. 825, 835, 836 (1994); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Jones, Hamlin, and Gore contend that Harper's claims for negligence are barred by the one-year statute of limitations set forth in section 8.01-243.2 of the Virginia Code. (Mem. Supp. Mot. Dismiss 4-5, ECF No. 32.) That section provides:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or <u>within six months after all administrative remedies are exhausted, whichever occurs later</u>.

17

Va. Code Ann. § 8.01-243.2 (West 2016) (emphasis added). Harper filed this action on May 13, 2015, the date that he placed his Motion for Enlargement of Time in the prison mailing system.[10] See Houston v. Lack, 487 U.S. 266, 276 (1988). Harper's claims against Jones, Hamlin, and Gore accrued, at the latest, on June 25, 2013, April 3, 2014, and February 18, 2014, respectively, when these Defendants allegedly failed to provide appropriate medical care. Harper failed to file this action within one year of that date. However, the record does not establish, and these Defendants have not addressed, whether Harper even tried to exhaust all of his available administrative remedies with respect to his claims. Because of this, the Court cannot determine whether Harper filed this action within six months after he exhausted his available remedies. Because the Court cannot determine at this time whether Harper's negligence claims are barred by the limitations period set forth in section 8.01-243.2, the Motion to Dismiss will be denied with respect to Claims One (a), Two (a), and Five (a).

---

[10] The Court opened this action upon receipt of Harper's Motion for Extension of Time. By Memorandum Order entered on May 29, 2015, the Court directed Harper to submit a statement identifying the nature of the action. (ECF No. 3, at 1.) The Court received Harper's response on June 10, 2015. (ECF No. 4.) By Memorandum Order entered on July 20, 2015, the Court granted Harper's Motion for Extension of Time to the extent that the Clerk was directed to file Harper's June 10, 2015 submission as the Complaint in this matter. (ECF No. 7, at 1.)

## VI. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 31) will be granted in part and denied in part. Claims One (b), Two (b), Two (c), and Five (b) will be dismissed. Harper's claims against Quintana and Dugger will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Any party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

The Clerk is directed to send a copy of this Memorandum Opinion to Harper and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: November 9, 2016
Richmond, Virginia