IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LINWOOD HARPER,

    Plaintiff,

v.                                               Civil Action No. 3:15CV303

DR. GORE, et al.,

    Defendants.

**MEMORANDUM OPINION**

Linwood Harper, a Virginia inmate proceeding pro se and in forma pauperis, has filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Harper's Particularized Complaint. (ECF No. 14.) Harper's Particularized Complaint raised the following claims for relief:

    Claim One:     Nurse Jones (a) acted negligently and (b) violated Harper's rights under the Eighth

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

|              | Amendment[2] by providing Harper the wrong medication on June 25, 2013. (<u>Id.</u> at 5.)[3] |
|---|---|
| Claim Two:   | Nurse Hamlin (a) acted negligently, (b) violated Harper's rights under the First[4] and Fourteenth[5] Amendments by "respond[ing] to Harper's informal complaint in an unprofessional manner," and (c) violated Harper's rights under the Eighth Amendment by failing "to take the proper precautions [for] treating Harper." (<u>Id.</u> at 6.) |
| Claim Three: | Officers Matheny, Quintana, and Crowell (a) acted negligently and (b) violated Harper's rights under the Eighth Amendment by delaying their response to Harper's cellmate's request that Harper receive medical attention. (<u>Id.</u>) |
| Claim Four:  | Sergeants Dugger and Lowe violated Harper's rights under the Eighth and Fourteenth Amendments by delaying their response to Defendants Matheny, Quintana, and Crowell regarding Harper's need for medical attention. (<u>Id.</u> at 7.) |
| Claim Five:  | Dr. Gore (a) acted negligently and (b) violated Harper's rights under the Eighth Amendment by failing to refer Harper to a specialist. (<u>Id.</u> at 8.) |

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] The Court uses the pagination assigned to Harper's Particularized Complaint by the CM/ECF docketing system. The Court corrects the spacing, capitalization, and punctuation in quotations from the Particularized Complaint.

[4] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

Harper seeks damages for relief. (Id. at 10-11.)

By Memorandum Opinion and Order entered on November 10, 2016, the Court granted in part and denied in part the Motion to Dismiss filed by Defendants Jones, Hamlin, and Gore, and dismissed Claims One (b), Two (b), Two (c), and Five (b). Harper v. Gore, No. 3:15CV303, 2016 WL 6662697, at *7 (E.D. Va. Nov. 10, 2016). The Court also dismissed all claims against Defendants Quintana and Dugger without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Id.

The matter is before the Court on the Motion for Summary Judgment (ECF No. 53) filed by Defendants Nurse Jones, Nurse Hamlin, and Dr. Gore (collectively, "Defendants").[6] Despite receiving Roseboro[7] notice, Harper has not responded to the Motion for Summary Judgment. For the reasons stated below, the Court will grant the Motion for Summary Judgment.

I. **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[6] Nurse Jones is a Registered Nurse at Greensville Correctional Center ("GCC"). Nurse Hamlin is the Head Nurse at GCC. Dr. Gore is the Medical Director at GCC. (Part. Compl. 1.)

[7] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

3

Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." <u>Id.</u> at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." <u>United States v. Carolina Transformer Co.</u>, 978 F.2d 832, 835 (4th Cir. 1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. <u>Anderson</u>, 477 U.S. at 251 (citing <u>Improvement Co. v. Munson</u>, 81 U.S. (14 Wall.) 442, 448 (1871)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether

there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit: (1) a declaration from Nurse Jones (Mem. Supp. Mot. Summ. J. Ex. 1 ("Jones Decl."), ECF No. 48-1); (2) copies of Harper's medical records (id. Ex. 1-A ("Medical Records"), ECF Nos. 48-2 through 48-4);[8] (3) a copy of Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1, effective July 1, 2013 (id. Ex. 2 ("July 1, 2013 Operating Procedure § 866.1"), ECF No. 48-5); (4) a copy of VDOC Operating Procedure § 866.1, effective December 1, 2010 (id. Ex. 3 ("December 1, 2010 Operating Procedure § 866.1"), ECF No. 48-6); and, (5) copies of

---

[8] The Court employs the "MR-000001," which is the pagination assigned to the Medical Records by the Virginia Department of Corrections. However, the Court omits the initial zeros from the pagination when referring to the Medical Records.

grievances and informal complaints submitted by Harper (id. Ex. 4, ECF No. 48-7).

Harper did not respond to the Motion for Summary Judgment, thereby failing to cite to any evidence that he wishes the Court to consider in opposition. See Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Harper's Particularized Complaint is sworn to under penalty of perjury. Harper also attached an Affidavit to his Particularized Complaint ("Harper Aff.," ECF No. 14-1).

In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Harper.

## II. PERTINENT FACTS

On June 25, 2013, Nurse Jones "was the diabetic nurse administering insulin and giving medication. Mr. Harper came to get his meds." (Jones Decl. ¶ 4.) Nurse Jones gave Harper pills "that he was not familiar with." (Part. Compl. 5) Harper told Nurse Jones "that she ha[d] given him [the] wrong prescription drugs to take and that it was not his medication." (Id.) Nurse Jones replied, "'Harper it's your meds take them,'"

so Harper took the medication. (Id.)[9] Nurse Jones reported the incident to Nurse Hamlin. (Jones Decl. ¶ 4.)

That evening, Harper "had an episode of hypoglycemia, meaning that he had abnormally low blood sugar that resolved during the provider visit[.]" (Id. ¶ 5.) A nurse noted that Harper was lethargic, disoriented, and weak. (Medical Records 100.) Harper was unable to talk and walk on his own. (Id.) Harper was given a glucogen injection, after which his blood sugar rose to 102. (Id.) Harper was then given a glucose tube, after which his blood sugar rose to 129. (Id.) The nurse referred Harper to Dr. Gore, who directed that an IV of Dextrose be started and that Harper be sent to the hospital for evaluation. (Id.)

On June 26, 2013, Harper saw a provider, who noted that Harper had experienced a recent episode of hypoglycemia. (Id.

---

[9] Nurse Jones avers that she

> looked at [Harper]s medication and noticed pink pills that I knew he did not normally take, so I asked whether [Harper] had seen a doctor. He shrugged his shoulders, I then rechecked his Medication Administration Record, and the medications that were in his cup were those listed on his MAR. I told him he could take his medication and refuse the new meds. He did not respond, he shrugged his shoulders and took the med cup and took all of the medicine.

(Jones Decl. ¶ 4 (internal citation omitted).) The new medications that were listed on Harper's medication administration record were Thorazine, an antipsychotic, and Benadryl. (Medical Records 239-42.) These medicines are not asserted to be a part of treatment for diabetes.

7

at 99.) Harper was oriented, but complained of being drowsy and lightheaded. (Id.) Harper indicated that he had lost consciousness during the hypoglycemic incident. (Id.)

On July 1, 2013, Nurse Hamlin informed Harper that Nurse Jones "did indeed give him the wrong medication and that he had the right to refuse medication offered to him." (Part. Compl. 6.)

On January 9, 2014, Harper's provider saw Harper for complaints that Harper had been experiencing headaches since June. (Medical Records 83.) The headaches typically occurred during the evenings. (Id.) The provider noted that Harper's headaches did not appear to be related to high blood sugar. (Id.) Harper declined a trial of beta-blockers and requested to see a specialist. (Id.) The provider made a request for Harper to receive a neurological consultation. (Id.)

The request for Harper to see a neurologist was deferred pending receipt of information regarding Harper's evening blood sugar levels. (Id. at 126.) Harper's provider was also directed to consider preventative medications such as beta-blockers and Topamax, and whether Excedrin could have caused rebound headaches. (Id.) On February 10, 2014, Nurse Hamlin noted that the request for Harper to see a neurologist had been deferred. (Id. at 82.)

On February 18, 2014, Harper saw his provider to discuss the deferred referral. (Id.) The provider diagnosed Harper with headaches that had improved. (Id.) That same day, Harper asked Dr. Gore if he could be referred to a specialist for a CAT scan and MRI. (Part. Compl. 8.) Dr. Gore "told Harper she will see if that is needed and she felt that seeing a specialist was not necessary." (Id.) Harper told Dr. Gore that he was suffering from constant headaches and dizziness because he had been given the wrong medication by Nurse Jones. (Id.) Dr. Gore told Harper that he was being monitored, but that "since you have written a complaint, you will be scheduled to see a specialist." (Id.)

On March 31, 2014, Harper saw a nurse for complaints of dizziness and headaches that he had been experiencing since June of 2013. (Medical Records 78.) Harper stated that he experienced dizziness three to four times a week, and also experienced blurred vision. (Id.) Excedrin helped "sometimes." (Id.) The nurse referred Harper to the doctor for further evaluation. (Id.)

On April 3, 2014, Nurse Hamlin told Harper that "he was being monitored" and that he could purchase Tylenol from the commissary. (Part. Compl. 6.) "Harper explained to Nurse Hamlin that he needed more treatment and wanted to see a specialist." (Id.)

9

Harper saw the doctor on April 11, 2014. (Medical Records 77.) Harper reported daily headaches with occasional blurred vision. (Id.) Harper declined the doctor's suggestion that he try beta-blockers or amitriptyline. (Id.) The doctor discontinued Excedrin and prescribed 500 mg of Tylenol. (Id.)

On May 16, 2014, Harper saw Dr. Luong for his headaches. (Id. at 74.) Dr. Luong prescribed amitriptyline. (Id.) The next day, Dr. Luong discontinued amitriptyline and directed that Harper be scheduled for an appointment to discuss starting Inderal. (Id.)

### III. NEGLIGENCE CLAIMS

In Claims One (a), Two (a), and Five (a), Harper contends that Nurse Jones, Nurse Hamlin, and Dr. Gore acted negligently with respect to his medical care. (Part. Compl. 5-6, 8.) Defendants contend that they are entitled to summary judgment on Harper's claims because Harper has failed to provide expert testimony to establish breach of the standard of care and causation. (Mem. Supp. Mot. Summ. J. 8-10, ECF No. 48.) The Court agrees.

Harper's negligence claims against Defendants constitute claims for medical malpractice. See Va. Code Ann. § 8.01-581.1 (West 2016) ("'Malpractice' means any tort action or breach of contract action for personal injuries or wrongful death, based

10

on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient."). Under Virginia law, "[i]n a medical malpractice action, 'a plaintiff must establish not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death.'" Bitar v. Rahman, 630 S.E.2d 319, 323 (Va. 2006) (quoting Bryan v. Burt, 486 S.E.2d 536, 539-40 (Va. 1997)). "Expert testimony is generally required to establish not only the appropriate standard of care and a deviation from the standard, but also 'that such a deviation was the proximate cause of the claimed damages.'" Fruiterman v. Granata, 668 S.E.2d 127, 132 (Va. 2008)(quoting Perdieu v. Blackstone Family Practice Ctr., Inc., 568 S.E.2d 703, 710 (Va. 2002)); see Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 164 n.2 (4th Cir. 1988) ("[E]xpert opinion is of course the prime—indeed usually the only—way to prove medical causation.").

### A. Nurse Jones

In Claim One (a), Harper contends that Nurse Jones acted negligently by providing him the wrong medication on June 25, 2013. (Part. Compl. 5.) He alleges that, because of Nurse Jones's negligence, he has experienced many medical problems since then. (Id. at 10.)

Nurse Jones in fact gave Harper the wrong medication for diabetes, knowing that he had diabetes and had been prescribed medication for it. The record thus establishes that Nurse Jones was negligent. Harper, however, has failed to meet his burden of providing evidence from an expert witness to support his contention that Nurse Jones' negligence caused his hypoglycemic episode on the evening of June 25, 2013. Nor has Harper produced any evidence that the provision of the wrong medication caused the other various medical issues, such as dizziness and headaches, he has experienced since then. See Crinkley, 844 F.3d at 164 n.2. Because Harper has failed to meet his burden to show a triable issue of fact as to whether Nurse Jones' conduct caused the injuries of which he complains, Claim One (a) will be dismissed.

B. **Nurse Hamlin and Dr. Gore**

In Claims Two (a) and Five (a), Harper alleges that Nurse Hamlin and Dr. Gore acted negligently by failing to refer him to a specialist for his headaches and other medical issues. (Part. Compl. 6, 8.) The record, however, is replete with evidence that Harper received treatment for his headaches and other issues. For example, Harper was prescribed Excedrin, Tylenol, amitriptyline, and Inderal. (Medical Records 74, 77-78, 126; Part Compl. 6.) A provider did request a referral for Harper to see a neurologist, but the referral was deferred, pending

assessment of the diabetic symptoms. (Medical Records 82, 126.) Harper has not provided any expert testimony to suggest that the actions taken by Nurse Hamlin and Dr. Gore deviated from the standards of care. See Fruiterman, 668 S.E.2d at 132. Moreover, Harper has not provided any evidence to establish that the decision not to refer him to a specialist caused him injury. See Crinkley, 844 F.3d at 164 n.2. Because Harper has failed to meet his burden of proof with respect to whether Nurse Hamlin and Dr. Gore acted negligently, Claims Two (a) and Two (b) will be dismissed.

V. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 47) will be granted. Claims One (a), Two (a), and Five (a) will be dismissed. The action will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Harper and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 13, 2017